J-A23045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIANE TITCOMB | : | |
| | : | |
| Appellant | : | No. 449 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 22, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001049-2020

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED: NOVEMBER 28, 2022**

Appellant Diane Titcomb appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County on February 22, 2022, following her conviction of Unauthorized use of automobiles or other vehicles.[1] We affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

**PROCEDURAL HISTORY**

. . .  [Appellant] waived her right to a trial by jury and a bench trial was held before this [c]ourt on November 18, 2021, wherein she was found guilty. Sentencing was deferred to provide both parties the opportunity to prepare for a restitution hearing, if necessary. On February 22, 2022, [Appellant] was sentenced to twelve (12) months of probation and ordered to pay $7,132.34 in restitution.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. § 3928(a).

Additionally, this [c]ourt authorized the transfer of supervision to Lackawanna County.

On March 11, 2022, [Appellant] filed a timely Notice of Appeal. This Court directed [Appellant] to file a Concise Statement of Matters Complained of on Appeal (hereinafter "Statement"). [Appellant] filed her timely Statement on March 21, 2022.

\*\*\*

**FACTUAL BACKGROUND**

In August of 2017, Appellant brought her vehicle, a 2008 Lincoln MKS, to Hoffman Ford in Harrisburg, Pennsylvania for a vehicle recall. (Notes of Testimony, Bench Trial 11/28/21 ("N.T.") at 10, 39). There were concerns that damage was caused to Appellant's vehicle while it was being serviced for the recall. (N.T. at 10). Therefore, Hoffman Ford agreed to repair any damage free of charge and provide Appellant a courtesy vehicle while hers was being repaired. (N.T. at 10-11).

Scott McCann (hereinafter "Mr. McCann"), a former assistant service manager at Hoffman Ford, testified that Hoffman Ford typically executes a contract for the use of a courtesy or loaner vehicle. (N.T. at 12). The use of a courtesy vehicle is complimentary while the repairs are being made to a customer's vehicle. (Id.)

Appellant signed a contract with Hoffman Ford for the use of a 2017 Ford Fusion that was due back on August 29, 2017, by 5:00 P.M. (N.T. at 14-16). Mr. McCann identified Appellant as the person who was provided the courtesy vehicle. (N.T. at 14, 24).

Appellant did not return the vehicle on August 29, 2017, by 5:00 P.M. (N.T. at 16). Mr. McCann testified that he attempted to contact Appellant via telephone or e-mail at least twenty-five (25) times. (Id.) He further testified that Appellant returned his telephone call once and said that she was in North Carolina for work. (N.T. at 17). Mr. McCann requested that the vehicle be returned, and asked Appellant to provide him a timeframe for when it would be returned. (Id.) Appellant did not give him a response. (Id.)

Officer Jason Myers (hereinafter "Officer Myers") of the Lower Paxton Police Department was contacted by Hoffman Ford to report the vehicle as stolen on September 14, 2017. (N.T. at 41-42). Thereafter, Officer Myers followed-up with Hoffman Ford and requested that they send demand letters to Appellant. (N.T. at 42). Todd Hoffman (hereinafter "Mr. Hoffman"), one of the owners of Hoffman Ford, testified that multiple certified letters

were sent to a variety of addresses for Appellant that were found with the assistance of Officer Myers. (N.T. at 27-28). Mr. Hoffman testified that the letters were sent to an address in Pennsylvania, as well as one in Arizona that were from Appellant's drivers licenses. (N.T. at 28). The certified letters stated that the vehicle was overdue, it was due by August 29, 2017, at 5:00 P.M., and that if the car was not returned, Hoffman Ford would report it to law enforcement. (Id.)

Additionally, Officer Myers attempted to contact Appellant at least five (5) times. (N.T. at 42). He eventually received a telephone call back from Appellant on December 29, 2017. (Id.) Appellant had learned that criminal charges were filed against her and demanded to know why. (N.T. at 44). Officer Myers explained that Appellant was in possession of a vehicle that did not belong to her and should have been returned months ago. (Id.) Appellant became very uncooperative, refused to speak with him, and demanded to speak with the chief of police. (N.T. at 44-45). She ultimately hung up on Officer Myers. (N.T. at 45).

Mr. Hoffman explained that the courtesy vehicle was a brand-new vehicle owned by the parent corporation, Ford Motor Company, that was placed into the loaner program to the dealer, Hoffman Ford. (N.T. at 30). Once a vehicle owned by Ford Motor Company is stolen while in possession of a dealer, the insurance company will pay the dealer seventy-five percent (75%) of the cost of the vehicle. (N.T. at 32). In this case, the 2017 Ford Fusion was valued at $25,429.38. (N.T. at 31). Hoffman Ford ultimately received seventy-five percent (75%) of the value, or $19,072.04, from the insurance company. (N.T. at 32). The remaining twenty-five percent (25%), or $6,537.54, was absorbed by Hoffman Ford as a loss. (N.T. at 32, 35).

Appellant never returned the courtesy vehicle, and she was not authorized to use it beyond August 29, 2017, at 5:00 P.M. (N.T. at 18-19, 24). In late December of 2017, the courtesy vehicle was recovered by a third-party collection company in Arizona. (N.T. at 33). Hoffman Ford incurred a fee of $475 for the repossession and return of the 2017 Ford Fusion. (N.T. at 33). Additionally, Mr. Hoffman testified that the company incurred $300 in administrative costs for the time spent sending certified letters, working with the insurance companies, preparing documentation, and working with the police department. (N.T. at 34). Further, Appellant never returned to Hoffman Ford to pick up her vehicle once the repairs were completed. (N.T. at 39). On November 21, 2018 - fourteen (14) months after Appellant received the courtesy vehicle - Hoffman Ford reported Appellant's

vehicle to PennDOT as abandoned. (N.T. at 39).

Trial Court Opinion, filed 5/10/22, at 1-5.

Appellant filed her Notice of Appeal on February 22, 2022. On April 4, 2022, Appellant filed her Concise Statement of Errors Complained of Upon Appeal pursuant to Pa.R.A.P. 1925(b), and the trial court filed its Rule 1925(a) Opinion on May 10, 2022.

In her brief, Appellant presents a single issue for this Court's review:

> Whether the evidence was insufficient to convict [Appellant] of unauthorized use of a vehicle, where no documentation or verbal testimony presented by the Commonwealth sufficiently proved [Appellant] to be operating the vehicle after August 29th, 2017?

Brief for Appellant at 4.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017) (*en banc*) (citation omitted). "This standard of deference is not altered in cases involving a bench trial, because the province of a trial judge sitting without a jury is to do what a jury is required to do." *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa.Super. 2008) (internal quotation marks and citation omitted), *appeal denied,* 964 A.2d 894 (Pa.2009).

Although the finder of fact may make reasonable inferences from the testimony presented, the "inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt." *Commonwealth v. Scott*, 597 A.2d 1220, 1221 (Pa. Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." *Id*. In addition, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

The offense of Unauthorized use of automobiles and other vehicles is defined at 18 Pa.C.S.A. § 3928(a) as follows:

> **(a) Offense defined.**--A person is guilty of a misdemeanor of the second degree if he operates the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner.

18 Pa.C.S.A. § 3928(a).

Appellant herein contends the evidence is insufficient to show that she operated, *i.e.*, exercised control and dominion over, the Ford Fusion that Hoffman Ford had loaned her while repairs to her own vehicle were being made. Relying upon cases pertaining to DUI convictions, Appellant reasons that "[n]o witness testimony or documentation at trial provided evidence beyond a reasonable doubt that [Appellant], as opposed to any other party, operated the vehicle at any time after 5:00 p.m. August 29th, 2017." Brief for Appellant at 13, 15-16.

Appellant further posits the evidence failed to establish that the Ford Fusion had been recovered from Appellant's residence in Arizona, as opposed to an "entirely different locale." *Id*. at 15-17. Appellant reasons that the instant case is analogous to **Commonwealth v. Henry**, 875 A.2d 302 (Pa.Super. 2005) wherein this Court reversed the defendant's conviction after holding that his fingerprint found in a vehicle was alone insufficient to establish operation of the vehicle beyond a reasonable doubt. *Id*. at 17-18. In **Henry**, this Court stated:

> His fingerprint on the placard reveals only that at some point Appellant was present in the vehicle and nothing more. Since the vehicle was found more than a day after being reported stolen with the driver's side door lock broken, Appellant could have had access to the interior of the vehicle after it was abandoned by the perpetrator who stole the car. The fingerprint alone is insufficient to establish operation, *i.e.,* conscience control or dominion over the vehicle, beyond a reasonable doubt. As operation of the vehicle is an essential element of the crime of unauthorized use of automobiles, and the evidence presented was insufficient to establish this element, we must reverse.

*Id* at 306.

The trial court, sitting as the factfinder in this case, explained its reasoning with regard to its verdict as follows:

> For the charge of unauthorized use of a motor vehicle, the Commonwealth must prove that a defendant operated the motor vehicle without the consent of the owner. 18 Pa.C.S.A. § 3928. The testimony and evidence adduced during the bench trial, together with all reasonable inferences, is sufficient to sustain the conviction of unauthorized use of a motor vehicle. On or about August 28, 2017, Appellant dropped off her vehicle at Hoffman Ford to fix damage that allegedly occurred during service on her vehicle due to a recall. She executed a contract with Hoffman Ford for the complimentary use of a courtesy vehicle, a 2017 Ford Fusion, while repairs were being done to her vehicle. The contract explicitly stated that the courtesy vehicle was to be returned by August 29, 2017, at 5:00 P.M.
> Appellant never returned the vehicle, nor did she pick-up her own vehicle. After numerous attempts were made to contact Appellant via telephone and certified mail, Hoffman Ford reported the vehicle as stolen to Lower Paxton Police Department. Mr. Hoffman testified that one of the addresses he found for Appellant was in Arizona. The courtesy vehicle was ultimately recovered in Arizona in late December of 2017. Appellant was not authorized to use the vehicle beyond August 29, 2017, at 5:00 P.M., and never expressed an intent to return the vehicle. Therefore, the testimony and evidence presented at trial, together with all reasonable inferences, is sufficient to sustain the conviction of unauthorized use of a motor vehicle.

Trial Court Opinion, filed 5/10/22, at 8.

We have reviewed the record including the notes of testimony from Appellant's trial mindful that we may not reweigh the evidence and substitute our judgment for that of the factfinder and that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *See Commonwealth v. Marrero*, 914 A.2d 870, 872

- 7 -

(Pa.Super.2006). Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id*.

We agree that when viewed in a light most favorable to the Commonwealth as the verdict winner, there was sufficient circumstantial evidence to establish that Appellant operated the Ford Fusion after 5:00 p.m. on August 28, 2017, without the consent of Hoffman Ford.

Mr. Scott McCann, an employee with Hoffman Ford from 2011 to 2018, testified that he met Appellant in person, she was individual who executed the contract for the use of a courtesy vehicle, she took the Ford Fusion from Hoffman Ford's premises, she was not permitted to utilize the Ford Fusion after 5:00 P.M. on August 29, 2017, she told him she was in North Carolina for work, and she never returned the vehicle. Mr. McCann contacted Appellant when her car repairs were completed, and thereafter attempted to contact her over twenty-five times to return the Ford Fusion, to no avail. N.T. Bench Trial. 11/18/21, at 9, 24-25.

Mr. Todd Robert Hoffman, one of the owners of Hoffman Ford, also testified that Appellant never returned the vehicle, although she was notified her vehicle repairs were finished through multiple phone calls and certified letters. *Id*. at 26-29. Officer Jason Myers further testified that Appellant neither agreed to return nor ever did return the Ford Fusion. *Id*. at 44-45.

Regardless of where the Ford Fusion was finally located some eighteen months later, the record establishes that Appellant drove away in it knowing it was a loaner vehicle at her disposal while repairs to her own car were being completed and was due back by 5:00 p.m. on August 29, 2017. Appellant argues that the repairs to her vehicle were not made in a timely fashion. Assuming, *arguendo*, that this were the case, her possession of the vehicle was not contingent upon that fact, for the agreement she executed clearly indicated that the vehicle was due back the next day. Even assuming that the repairs were not timely completed and that she had been authorized to use the loaner vehicle until the repairs to her own car were made, Appellant clearly lost that permission when she failed to return the Ford Fusion at all.

It was not unreasonable to expect that Appellant would have communicated her reason for possessing the Ford Fusion eighteen months beyond the date on which she was contractually obligated to return it when Officer Myers notified her that she was being criminally charged with unauthorized use. Whether the Ford Fusion was recovered at Appellant's address in Arizona is inapposite, for in the absence of any explanation, the trial court herein could reasonably infer that Appellant, who had abandoned her own vehicle at Hoffman Ford and admitted to being in North Carolina for work, was operating the courtesy vehicle without the owner's consent out of state. **See Commonwealth v. Hogan**, 468 A.2d 493, 497 (Pa.Super. 1983).

With regard to her claim that the Commonwealth failed to produce evidence that she drove the vehicle to Arizona where it was ultimately located, testimony established that Appellant was the one who left Hoffman Ford in the loaner vehicle, and Hoffman Ford authorized only her to operate the vehicle; Appellant admitted to being in South Carolina at one point, and she never indicated that any other individual had taken possession of the car. The trial court acting as the fact finder was free to find this circumstantial evidence satisfied the requirement that Appellant operated the vehicle after 5:00 p.m. on August 29, 2017. This is especially so in light of the fact that she failed to ever recover her own vehicle, which would necessitate the loaner as her primary means of transportation.

In this way, we find the instant matter distinguishable from **Commonwealth v. Henry**, 875 A.2d 302 (Pa.Super. 2005). where the only evidence implicating the defendant was a fingerprint found on a window placard inside the car. Appellant executed a contract wherein she agreed to return a courtesy vehicle the next day in exchange for her repaired one. Not only did she fail to return the vehicle at all, but she abandoned her own car. It is disingenuous for Appellant to suggest that she thought she could keep the Ford Fusion for a year and a half without ever communicating with Hoffman Ford and that she did not drive the car at all during that time.

In light of the foregoing, and with careful consideration of both the facts of record and prevailing case law, we conclude that Appellant's issue

challenging the sufficiency of the evidence underlying her conviction is without merit. We therefore affirm the February 22, 2022, judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/28/2022